# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br><br>RICKY A. NAYLOR,<br><br>    Debtor. | Case No. 19-13538-SAH<br>Chapter 7 |
| CHRISTOPHER LLOYD,<br><br>    Plaintiff,<br><br>v.<br><br>RICKY A. NAYLOR,<br><br>    Defendant. | Adv. No. _____ |

## COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT

Creditor Christopher Lloyd ("Lloyd") files this Complaint (the "Complaint") against Debtor Ricky A. Naylor (the "Defendant") pursuant to section 523 of title 11 of the United States Code (the "Bankruptcy Code"). For his Complaint, Lloyd respectfully states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. The filing of this Complaint commences an adversary proceeding within the meaning of Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter within the meaning of 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1439662

2. Plaintiff, Christopher Lloyd, is a creditor of the Defendant.

3. Defendant, Ricky A. Naylor, is a debtor in this Chapter 7 proceeding.

## STATEMENT OF FACTS

4. On August 28, 2019 (the "Petition Date"), the Defendant commenced the underlying bankruptcy case through the filing of a voluntary petition under Chapter 7 of the Bankruptcy Code.

5. Naylor Concrete and Steel Erectors, LLC ("Naylor Concrete") is an Arkansas limited liability company of which Defendant is the principal.

6. On or about August 1, 2016, Naylor Concrete and Lloyd executed a Line of Credit Agreement (the "Line of Credit Agreement") by which Naylor Concrete was extended a line of credit by Lloyd.

7. Contemporaneously alongside the execution of the Line of Credit Agreement, Defendant executed a Guaranty Agreement (the "Line of Credit Guaranty Agreement") through which Defendant became personally obligated for Naylor Concrete's performance on the Line of Credit Agreement.

8. At the time of the execution of the Line of Credit Agreement and the Line of Credit Guaranty Agreement, the parties acknowledged, expressly in the contract documents, that Lloyd had already advanced $3,377,000.00 that was characterized as a "prior advance" and was due to be repaid under the Line of Credit Agreement.

9. Naylor Concrete procured significant additional advances, in addition to the original $3,377,000.00, from Lloyd under the Line of Credit Agreement; the current total

2

outstanding balance on the Line of Credit Agreement, as of the Petition Date, is $6,544,195.00.

10. In conjunction with procuring money advances under the Line of Credit, the Defendant affirmatively misrepresented and concealed that his use of funds in a manner in violation of the Line of Credit.

11. The Line of Credit expressly limited the purpose and use of money advances thereunder.

12. Upon information and belief, in order to induce Naylor to provide advances under the Line of Credit, the Defendant affirmatively misrepresented the intended use of the moneys being requested and concealed that past advances had been used for improper purposes.

13. The Line of Credit also expressly provided for the assignment and transfer of a net profits interest in Naylor Concrete to Lloyd.

14. Upon information and belief, the Defendant affirmatively misrepresented and concealed the financial results of Naylor Concrete in order to induce Lloyd to make additional advances under the Line of Credit.

15. In addition, in the procuring the money advances under the Line of Credit Agreement, the Defenant concealed and affirmatively misrepresented his and Naylor Concrete's financial position to Lloyd.

16. Had Lloyd known about the Defendant's misrepresentations and concealments, Lloyd would not have extended <u>any</u> credit to Naylor Concrete.

17. On or about January 17, 2018, Naylor Concrete executed a Promissory Note (the "Promissory Note") in the principal amount of $500,000.00 with Crothers Management, Inc. ("Crothers Management"), a Texas corporation.

18. Lloyd is the current holder of the Promissory Note.

19. Contemporaneously alongside the execution of the Promissory Note, Defendant executed another Guaranty Agreement (the "Promissory Note Guaranty Agreement") through which Defendant became personally obligated for Naylor Concrete's performance on the Promissory Note.

20. To secure repayment of the amounts due under the Promissory Note, Naylor Concrete granted Crothers Management a collateral assignment of retainage accounts receivable for a certain construction project in Denver, Colorado (the "Denver Project").

21. Upon information and belief, Naylor Concrete, acting through the Defendant, has pledged the retainage account for the Denver Project to multiple investors.

## COUNT 1
## NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(A)(2)(A)

22. Lloyd incorporates each of the above and below paragraphs as if fully restated herein.

23. The Defendant falsely represented and concealed to Lloyd certain material facts related to the loan transactions.

24. The Defendant made these false representations and intentionally concealed material facts with the intention that Lloyd rely on the statements in authorizing advances under the Line of Credit Agreement

25. The Defendant knew his representations were false at the time they were made, and made such representations and concealments with the intent of deceiving Lloyd.

26. Lloyd reasonably relied on the statements in extending the numerous advances, pursuant to the Line of Credit Agreement, to Naylor Concrete, on which Defendant is a guarantor.

27. The Defendant benefitted from the advances.

28. Had Lloyd known of Defendant's false representations and concealments, Lloyd would not have entered into the Line of Credit Agreement with Naylor Concrete.

29. Had Lloyd known of Defendant's false representations and concealments, Lloyd would not have made any advances under the Line of Credit Agreement to Naylor Concrete.

30. Had Lloyd known of Defendant's false representations and concealments, Lloyd would not have purchased and become the holder of the Promissory Note from Crothers Management.

31. Such debt is therefore nondischargeable under Bankruptcy Code section 523(a)(2)(A).

WHEREFORE, Christopher Lloyd prays that the Court determine the Defendant to be liable to Lloyd under the Line of Credit Agreement and the Promissory Note, and the applicable guaranty agreements governing both, in the principal amount of $7,044,195.00 and any interest having accrued under the same, and that such amount be deemed to be nondischargeable pursuant to Bankruptcy Code section 523(a)(2)(A), and that Christopher Lloyd have such other and further relief as is just and proper.

## COUNT 2
## NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(A)(2)(B)

32. Lloyd incorporates each of the above and below paragraphs as if fully restated herein.

33. Prior to the Petition Date, the Defendant knowingly provided Lloyd with materially false written materials concerning his and Naylor Concrete's financial condition.

34. The Defendant provided the false financial information to Lloyd with the intention that Lloyd rely on the statements.

35. The Defendant provided the false financial information to Lloyd with the intent to deceive Lloyd.

36. Lloyd reasonably relied on the information in deciding to advance additional funds to Naylor Concrete.

37. Had the financial information submitted by the Defendant to Lloyd accurately reflected his and Naylor Concrete's financial condition, Lloyd would not have entered the Line of Credit Agreement.

38. Had the financial information submitted by the Defendant to Lloyd accurately reflected his and Naylor Concrete's financial condition, Lloyd would not have extended funds under the Line of Credit Agreement.

39. Had the financial information submitted by the Defendant to Lloyd accurately reflected his and Naylor Concrete's financial condition, Lloyd would not have purchased and become the holder of the Promissory Note from Crothers Management.

40. As a result of the Defendant's submission of materially false financial information to Lloyd, Lloyd has suffered damages under the Line of Credit Agreement and the Promissory Note, and the applicable guaranty agreements governing both, in the principal amount of $7,044,195.00 and any interest having accrued under the same,

41. As a result of Defendant's use of a materially false statement in writing concerning the financial condition of the Defendant and Naylor Concrete that Lloyd reasonably relied upon and that the Defendant provided with the intent to deceive Lloyd, the debts are therefore non-dischargeable under Bankruptcy Code section 523(a)(2)(B).

WHEREFORE, Lloyd prays that the discharge of Defendant, Ricky A. Naylor, be denied as as it pertains to the $7,044,195.00 in principal under both the Line of Credit Agreement and the Promissory Note, and interest accruing under both, pursuant to

Bankruptcy Code section 523(a)(2)(B) and that Lloyd have such other and further relief as is just and proper.

## COUNT 3
## NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(A)(4)

42.  Lloyd incorporates each of the above and below paragraphs as if fully restated herein.

43.  The Line of Credit provided for Naylor Concrete to assign a one-third net profits interest to Lloyd.

44.  The Defendant, by virtue of his position as the principal of Naylor Concrete, came into possession and control of the one-third net profits interest assigned to Lloyd.

45.  Upon information and belief, the Defendant fraudulently misappropriated the net profits interest assigned to Lloyd and used such funds for the Defendant's own improper purpose.

46.  The foregoing conduct by the Defendant constitutes embezzlement or larceny within the meaning of Bankruptcy Code section 523(a)(4) and renders the debt so incurred by the Defendant nondischargeable.

WHEREFORE, Christopher Lloyd prays that the Court determine the Defendant to be liable to Lloyd for the net profits interest assigned to Lloyd that was improperly misappropriated, and that such amount be deemed nondischargeable. Lloyd further prays for such other and further relief as is just and proper.

## COUNT 4
## NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(A)(6)

47. Lloyd incorporates each of the above and below paragraphs as if fully restated herein.

48. Defendant willfully and intentionally injured Lloyd's interest in the retainage accounts receivable pertaining to the Denver Project that were pledged to Lloyd.

49. Specifically, upon information and belief, Defendant has procured additional investment in Naylor Concrete by pledging the same rights to the retainage in the Denver Project to other investors.

50. In addition, the Defendant willfully and intentionally injured Lloyd's net profits interest in Naylor Concrete by misappropriating such funds.

51. The actions of the Defendant have damaged Lloyd.

52. The foregoing conduct by the Defendant constitutes conduct causing a willful and malicious injury to Lloyd and Lloyd's interest in the retainage account receivable property within the meaning of Bankruptcy Code section 523(a)(6) and renders the debt so incurred by the Defendant nondischargeable.

WHEREFORE, Christopher Lloyd prays that the Court determine the Defendant to be liable to Lloyd for Lloyd's interests in the retainage account and net profits interest that were injured by the Defendant's actions, and that such amounts be deemed

nondischargeable. Lloyd further prays for such other and further relief as is just and proper.

## STATEMENT PURSUANT TO BANKRUPTCY RULE 7012

53. Lloyd consents to entry of final orders or judgment by the Bankruptcy Court.

PHILLIPS MURRAH P.C.

*/s/Clayton D. Ketter*
Clayton D. Ketter, OBA No. 30611
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102
405.235.4100 – telephone
405.235.4133 – facsimile
cdketter@phillipsmurrah.com

*Attorneys for Plaintiff,*
*Christopher Lloyd*